Mr. Chief Justice, and may it please the Court, the question presented in this case is resolved by the text of the Fifth Amendment, which, unlike any other provision of the Constitution, imposes on the government an explicit duty to pay money. It's also answered by this Court's decision in first English, which holds that the just And that the Fifth Amendment itself furnishes a basis on which a court can award just compensation in an inverse condemnation case. And this right of property owners to sue in inverse condemnation to obtain just compensation for an alleged taking is at the heart of modern American takings law. It's at the heart of inverse condemnation claims filed against state and local governments nationwide, and it's also at the heart of every takings claim filed against the federal government under the Tucker Act. The Tucker Act provides no cause of action, no substantive entitlement to a remedy. The cause of action, the substantive entitlement to a remedy in every Tucker Act takings case is the self-executing Fifth Amendment. The same cause of action recognized in first English, the same cause of action pled here. To reject that cause of action now is to upend the way lower courts, both state and federal, understand the takings clause to work, and also to abandon this Court's consistent explanations of that clause, not just in first English, but in more recent cases, like Nick v. Township of Scott. And there's no reason to make that kind of drastic change. This Court has already recognized that money mandating legal obligations logically come along with the right to file a lawsuit to enforce those obligations. That's true as to statutes, which is what this Court held in Maine Community Health Options. It should be at least as true as to the Constitution, and this Court's precedents consistently teach that it is. I welcome the Court's questions. In your reply brief, you say that the 19th century federal courts were faced with a bedrock property right and no way to enforce it directly. Doesn't that seem to be at odds, the fact that the courts there had to resort to extra constitutional causes of action? Isn't that at odds with your argument now? I don't think so, Your Honor. The primary problem facing federal courts in the early part of the 19th century was a lack of jurisdiction. And I think the question of jurisdiction is just conceptually distinct from the question of whether there's a cause of action, whether there's a right to a remedy. Congress could tomorrow amend Section 1331 to reimpose an amount in controversy limit. And if it did that, that would prevent a number of people from bringing ex parte young actions in federal court. Those claims wouldn't cease to exist. Congress would just have eliminated the jurisdiction over them. And so I think there's a difference between jurisdictional limits, which limited takings claims, and even pleading requirements, like the limits to the forms of action, which also limited plaintiffs' abilities to bring certain kinds of claims. And the core question presented here, which is just whether there's an entitlement to relief. There's only one modern form of action, which just takes the shape of saying, I'm entitled to this remedy for that reason. The remedy is just compensation. The reason is the Fifth Amendment as applied through the 14th. And once the jurisdictional problems and the pleading problems are removed, as they have been in this case, the only question remains whether the Fifth Amendment mandates compensation, whether it mandates that remedy, which this court has already answered. First English says that the just compensation remedy is mandatory. And I think contrasting the arguments of the other side with the rule adopted by the California Supreme Court in Egan's is actually a useful illustration here. The California Supreme Court's decision in Egan said, we as a common law court don't want to recognize a claim for just compensation in a regulatory takings case. We think that intrudes on the legislature's prerogative. We don't recognize that cause of action. And First English says that doesn't matter. The cause of action, the entitlement to relief, flows directly from the Fifth Amendment. So too here. The complaint here pleads a cause of action directly under the Fifth Amendment. It says our property was taken and the Fifth Amendment. Yes, I agree that jurisdiction and a cause of action are distinct, but it's a little bit hard to see how in 1791. I mean, I think your argument is when the Fifth Amendment was ratified, those who ratified it had to see the Fifth Amendment as itself supplying the cause of action, because this was the crucial way to vitiate the takings right, the right to just compensation. But Congress didn't provide for federal question jurisdiction until 1875. So that kind of languished on the vine for a pretty long time, if you're right, that the founding generation or the ratifying generation in 1791 viewed it that way. Moreover, the historical evidence of private bills runs contrary to your argument because, yes, there was a right to just compensation. But we have all of this time throughout the 19th century of Congress enacting private bills to give just compensation. And I think you have to contend with that because I mean, I get that this is against Texas, against the state. But the 14th Amendment incorporated the Fifth Amendment as it was kind of a mountain of historical evidence that you've got to contend with. So I don't think that mountain does quite the work that Texas needs it to, Your Honor. And I think one problem here is the difficulty in mapping the modern conception of cause of action onto 1791 visions of the court. I think if you asked a lawyer in 1791 whether the Fifth Amendment contained a cause of action, they probably wouldn't understand the question. But if you ask them, can a property owner sue to enforce just compensation? The answer absolutely would have been yes. It would have been a suit in trespass. It would perhaps have been a suit in ejectment. But there was an understanding at the framing that this was an enforceable right. That establishes at most, it seems to me, that the Fifth Amendment envisioned some remedial mechanism would be available. And the common law trespass, as you point out, might have been it or conversion might have been it. It doesn't necessarily mean that there is itself an independent cause of action under the Fifth Amendment. I think it does, Your Honor, once the form... Why? You've just conceded that the cause of action that the framers would have understood would have been in trespass. Well, Your Honor, I think in modern terms, what the court means when it says cause of action... No, but we're talking about the original meaning. And you're asking us to appeal the original meaning and say they would have understood there would have been a cause of action. Perhaps. But what would that cause of action look like? I think they would have understood that there was an entitlement to a remedy. Some remedy. An entitlement to just compensation. Some way to get that. Yes. Fair enough. That doesn't necessarily mean there's a federal cause of action. It could mean it happens under state common law. Well, I mean, you would admit that a state common law cause of action did and could fully vindicate the Fifth Amendment. Yes, Your Honor. I think there could be a state common law action that vindicated the First Amendment. But I also think... Fifth. Fair enough. And that would be enough. Nothing more would be required. And in fact, that's how it operated for a long time. Well, certainly, Your Honor, if compensation is provided through any mechanism, there's no longer a Fifth Amendment injury to be remedied. OK. I understand that argument. That's not the argument you're pressing, though. That's because here, compensation hasn't been paid. The plaintiffs in this case continue to suffer the ongoing Fifth Amendment injury. Well, maybe that's because you allow this case to be removed, which I and, you know, I'm surprised you didn't oppose removal on that ground. And so there's no federal question that we need to resolve here because it's really a state common law cause of action. That would have been one option. Or maybe in federal court, you might have said we want a declaratory judgment, which everyone can see you can get under the Fifth Amendment and take pen and paper jurisdiction over our state common law cause of action, which would adequately vindicate our Fifth Amendment rights. You didn't pursue either of those courses here. So two responses, Your Honor. One, I don't think there was a good faith grounds to oppose Texas's removal because what the complaint says on its face is we are entitled to just compensation under the Fifth Amendment. Well, but it then pleads state causes of action to do so. No, Your Honor, it pleads a claim directly under the Fifth Amendment. Well, maybe that's another problem you face is if you had an adequate common law, do you dispute that Texas has an adequate common law remedy for your problem? I do, Your Honor. And this is actually an important point that that argument in your brief that the common law of Texas or state law has no mechanism to enforce the Fifth Amendment. Well, Your Honor, Texas did that one when I take seriously, but I didn't see it. So Texas asserts, Your Honor, that there is a Texas common law mechanism to vindicate the Fifth Amendment. But there is no Texas decision saying we sitting as a common law court invoke our common law powers to create a cause of that. No trespass, no conversion. Texas hears inverse condemnation claims arising under the Fifth Amendment. That's what the Texas Supreme Court said most recently in city of Baytown, Bisharaq. And it cites the Fifth Amendment. It doesn't invoke its common law power. Fair enough. I get all that now. All right. That's clarifying. But the nature of the argument before us isn't that Texas lacks a common law cause of action. It's whether or not Texas has such a thing. We're entitled to another remedy under federal law. I don't think that's right, Your Honor. What the Fifth Circuit said is that the complaint that alleges an entitlement to just compensation flowing from the Fifth Amendment doesn't state a claim that that claim is dead. Let's suppose that we did create a cause of action. Would it also waive sovereign immunity? And what would the statute of limitations be? It wouldn't necessarily waive sovereign immunity, Your Honor. I think that's a distinct question. And the statute of limitations would be the statute of limitations that is applied by lower courts when people actually bring these claims. There's a robust court of federal claims jurisprudence. Federal district courts hear claims arising under the Fifth Amendment, sometimes looking to state law to set the statute of limitations. Look to state law, don't they? But the claim itself, Your Honor, comes from the Fifth Amendment, not just in Texas, but in states nationwide. And I think this is an important point. Take Oregon, for example. Oregon signed on to the state's amicus brief in support of Texas. But the reason that Oregon pays just compensation for takings under the Fifth Amendment is the Oregon courts, citing First English, have said it must pay just compensation. And so answering the question presented. If we don't read First English the way you do, I mean, I think that footnote's pretty difficult to decipher. Do you lose? No, Your Honor. I don't think it's just the footnote in First English. I think it's the broader holding that the remedy is required. But I think there's no dispute here that there is an entitlement to relief. And certainly by the time of the ratification of the 14th Amendment, courts across the country had converged on how that kind of entitlement would be enforced. And it's enforced by a lawsuit directly against the entity that took the property that takes the form of saying you have this duty to provide just compensation. You have not fulfilled it. And I'd like the court to order you to fulfill it. Can I have just a small point of information? Your case was dismissed in federal court. Did you ask for a remand on your claims under the Texas Constitution? No, Your Honor. The district court is keeping pendant jurisdiction over the claims under the Texas. So you have a pending suit on the state law. Yes, Your Honor. But there is a dispute about the scope of the takings law that governs that question. Texas has taken the position in the lower courts that the Texas Constitution has a narrower definition of what counts as a taking than the federal. Well, then First English comes into. Because First English was about a state court claim and when it started, whether a temporary claim was a taking or not. And we said, yes, it's a taking. And so the state court had to pay for that taking. How is it different than First English in that respect? I don't think it's different from First English, Your Honor, except that here it was removed into federal court and then the Fifth Amendment aspect of the case was dismissed. I don't disagree with you, but First English is about what the substantive law of Texas is and what Texas has to pay. And so that issue should be resolved even in the district court, correct? I don't think so, Your Honor, because the backstop in First English is the Fifth Amendment that says that he met the backstop. Yes, it's the Fifth Amendment that provides the substantive law, but not necessarily. We didn't address whether it provides a cause of action. I think the court did, Your Honor. The United States is amicus. We're going to we're going to go into. Can I just add, I mean, this is similar to what Justice Sotomayor was just getting into. Are you saying that we don't have three separate concepts, right, remedy and cause of action? I thought those were three different things and perhaps First English only covered two of them. I'm not sure they're distinct concepts, Your Honor. I think the simplest way to understand cause of action is an entitlement to a particular remedy, which is why it's coherent to say someone might have a cause of action for an injunction. I thought it had to do with the forum, that you have a cause of action that is recognized in the judicial forum as opposed to, say, going to the legislature through through private bills. Well, I think to the extent that's the definition of cause of action, we would have a cause of action under the clear import of the history that's not the history. I guess I'm just trying to understand, is there does it make sense to think about the Fifth Amendment as providing the right and the remedy, but not speaking to where you're going to get that remedy from or what is the enforcement mechanism? That's how I sort of am conceptualizing this. And I think we differ about that. So I'd like to hear your opinion on it. I'm not sure that's a correct reading of the Fifth Amendment, Your Honor, in part because I think that everyone agrees there are some judicial remedies for the Fifth Amendment. I understand my friend's argument would be entitled to sue for injunctive relief or for ejectment in the absence of a path to a Fifth Amendment compensation remedy. So everyone agrees there's some judicial remedy. And I think the form of that judicial remedy depends on the scope of the government's obligation. There are two visions of the Fifth Amendment. One is that the Fifth Amendment just provides a precondition. The government is required to pay and it can be enjoined from taking the property if it doesn't pay. The other division that's adopted in First English that's reiterated in NYC is that the Fifth Amendment creates an obligation to pay just compensation. And if that's the ongoing obligation, the government has taken property, it owes just compensation today, will owe just compensation tomorrow. Courts are empowered to cure that ongoing obligation. It's not a question of damages for a past violation. It's a question of the government's obligation as it stands in court today. Mr. McNamara, can I go back to Justice Sotomayor's question and just ask for a point of clarification? I understood Texas law to provide a cause of action for vitiating the federal Fifth Amendment right. I took your answer, Justice Sotomayor, to be saying that Texas courts say you were talking about how Texas courts define a taking for purposes of the Texas Constitution. So am I wrong in thinking that Texas allows you to bring a state cause of action for the federal Fifth Amendment claim? I'm not sure whether that's right, to be honest, Your Honor, and I think two things flow from this. One, if it's true that there is a Texas common law cause of action under which we could, if we can vindicate our Fifth Amendment rights, then the Fifth Circuit still has to be reversed because it held that that substantive claim should be dismissed on the merits. Well, let me just, it's important for me to be able to understand this procedural point. Does Texas have to provide a state cause of action to vitiate the state takings right from the Texas Constitution? Yes, Your Honor. OK, it seems to me that it can't discriminate against the federal claim anyway. I think that's true, Your Honor. But Texas doesn't, Texas isn't trying to discriminate against the federal claim. What Texas says, like other state courts, is it's not doing, it doesn't say we're doing common law analysis and creating a cause of action. What Texas seems to be doing is constitutional analysis, just like the other state courts that specifically cite first English and say, ah, there is a cause of action here. I'm not familiar with any state case saying we are using our powers as a common law court to create a cause of action to vindicate the Fifth Amendment. What they say is we're looking at the Fifth Amendment. We see it creates the obligation. Frequently, they cite first English directly and they say that's what gives rise to the cause of action. And that, I think, is what's dangerous about the question presented here. As I understand Texas's argument, the complaint we filed in state court was perfectly valid and could be adjudicated. And the Fifth Amendment could have been adjudicated in state court. Once it was removed, Texas moved to dismiss and sought an interlocutory appeal and has successfully extinguished that. But my concern is that adopting Texas's arguments here tells all of these state courts that have pointed to first English and said this is the source of the Fifth Amendment is the source of the cause of action. Would look to a decision in this case, adopting Texas's arguments and say, OK, we were wrong. The Constitution does not, in fact, require a remedy. There is no federal constitutional cause of action. And that would eliminate the federal takings remedy in state courts across the nation. Mr. McDowell, the language of the takings clause is quite similar to the language of the due process clause in the Fifth Amendment, which immediately precedes it. No person shall be deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation. So why should they be read differently with respect to the creation of a cause of action? I don't think they have to be read differently, Your Honor. I think if there's an ongoing due process violation, a plaintiff could bring an ex parte young action. Ex parte young was not a 1983 action. No, not ex parte young, but a claim for damages. Well, I think that's the difference here, that we're not seeking damages, we're seeking just compensation. We're not saying there was a past completed violation of the Constitution and we want something to offset that. We're saying the government has taken property, which gives rise to a present duty to pay just compensation. And we want the present obligation enforced, not a backwards looking damages remedy concocted or created. And I think that entitlement to just compensation is how the framers would have understood the Fifth Amendment. The alternative view, the idea that all you get are injunctions, I don't think squares with either the text or how contemporary commentators talked about the clause. St. George Tucker and John Jay wrote about the takings clause in the context of the army seizing horses and military supplies. But if the army is seizing horses, the army is going to get the horses. The understanding would not have been that you could stop the army in the moment from seizing your horses. What St. George Tucker is writing about is the ongoing duty to provide compensation for the horses, which is also how contemporary courts wrote about the just compensation requirement, even constrained if they were by the forms of action. I think a great example of this is the Massachusetts Supreme Court's decision in evaluating an action brought as a writ of debt in Getty Navy inhabitants of Tewksbury, where the judges of the Massachusetts Supreme Court there said this isn't the right forum, this isn't an action in debt, you can't state it using that form. You have to go to a different forum to get your just compensation. But if that other forum denies you compensation, you can return here in the statement of one of the judges and ask for that remedy again, which will not probably be refused. If the Fifth Amendment confers a right to sue for just compensation in and of itself, is that right unqualified? And if it is not unqualified, what qualifications do you recognize? Oh, I certainly don't think it's unqualified, Your Honor. What qualifications do you recognize? It requires a court of competent jurisdiction. And so certainly Congress is free to channel jurisdiction however it likes. Texas is similarly free to create courts of jurisdiction as it pleases. But the underlying, all we're saying is that there is an underlying entitlement to receive just compensation, and that when that entitlement is denied, a court of competent jurisdiction can order that that just compensation be paid. Well, does it make sense to view the Fifth Amendment as providing a right to sue for compensation, but your ability to vindicate that right is totally dependent on Congress's discretionary choice to create lower federal courts and to give them jurisdiction to entertain such claims? It sounds like a very weak right if it's subject to limitation in that way. I think the same could be said of the entire Bill of Rights, though, Your Honor. The entire stratum of federal constitutional rights depends on Congress to create lower federal courts, courts where these rights can be vindicated. Once Congress does create those courts, and when a state defendant deliberately chooses to avail itself of those courts, the only question is whether that court can enforce the ongoing obligation to require the payment of just compensation. And I think that's ultimately what distinguishes this case from the court's Bivens cases, where Bivens cases are about the policy question of whether to create a remedy. They don't engage in constitutional text, history, and tradition analysis, which is why Justice Rehnquist could dissent in cases like Carlson v. Green and Davis v. Passman, and then less than a decade later, Chief Justice Rehnquist could write First English. Because we're not talking about a damages remedy, we're talking about the power of the federal courts to, when their jurisdiction is competently invoked and when the state has waived its sovereign immunity, require the state to comply with its ongoing constitutional duty. I think that matches both with the history, it matches with the tradition, and it matches particularly with the 14th Amendment context itself. It's worth remembering that when this court incorporated the Fifth Amendment against the states in Chicago, Burlington, and Quincy Railroad, it specifically incorporated the right to compensation. Not the right not to have the property taken, but the right to receive money that the due process of law necessarily included as a matter of first principles. Chicago Burlington actually doesn't cite the Fifth Amendment, but as a matter of first principles, it includes the right to receive compensation for the property taken. These cases rarely appear in federal court, in part because before Nick, no takings case could be filed ab initio, but also because, as the magistrate judge's opinion in this case points out, it's relatively rare for a state to choose to remove this federal right into a federal forum. But once it does so, once Texas has decided it wants the scope of our rights under the Fifth Amendment to be litigated in federal court, that can't change the scope of the claim we make. What the Fifth Circuit opinion below says is that we cannot state a claim invoking our rights under the Fifth Amendment, full stop. If Texas is right that, in fact, we have that right as a matter of Texas common law, then the Fifth Circuit was wrong to say that we only have that right under Section 1983. That counsels in favor of reversal, but this court has also squarely held, and again repeated in Nick, that the Fifth Amendment does furnish a basis on which a court can award just compensation. In the mine run of cases, that's going to be a state court awarding just compensation, but when the state wishes to be in federal court, I don't think there's a good faith basis for the plaintiff to say, I'm invoking my rights under the Fifth Amendment. I want the full scope of compensation that I'm entitled to under the Fifth Amendment, but I refuse to allow this claim that arises under my rights under the Fifth Amendment to be in federal court. It is the defendant's choice to have this federal claim that turns on federal law heard in federal court. That's the choice that Texas made, and that choice can't, on the merits, extinguish our Fifth Amendment remedy. What Texas has effectively accomplished here by making the unusual decision to remove is that it's eliminated the Fifth Amendment question from this case and given itself what it believes, I'm not conceding they're right about Texas law, but what it believes is a more favorable rule of Texas law. But if First English is right and the just compensation remedy is mandatory, then the just compensation remedy is mandatory, and Texas can't extinguish it through procedural maneuvers like removing this case to federal court. A claim for just compensation simply takes the form of saying the government has taken a property interest, and I, as the former owner, am entitled to the fair market value of that property. Can I just be clear, are you arguing that through Texas' maneuvering, that claim is no longer available to you? Yes, Your Honor, I think that's what Judge Oldham points out in his dissent below. I understand not in federal court, but are you claiming that Texas has prevented you from making this claim in state court? Yes, Your Honor, there will be no remand in this case. This case is staying in federal district court, and as Judge Oldham correctly pointed out, the upshot of the panel opinion below is that this case will proceed without any federal takings claim in it. If you had sought remand and it went back to Texas court, are you saying that there wouldn't be the opportunity to make this claim in state court? I'm just trying to understand if the claim is totally gone as a general matter. So I think, I see my light is on there. Go ahead. So I think, Your Honor, first, I don't know that we would have had grounds to fight remand because the claim does invoke our entitlement under federal law. But if the case were remanded, I think the question in Texas state court would be exactly the question presented here. Are we entitled, without the 1983 vehicle, to invoke our rights under the Fifth Amendment? Texas courts have said, yes, we are entitled to invoke our rights under the Fifth Amendment. But again, they just cite the Fifth Amendment. They're not invoking some special cause of action that they have created. They, like other courts, look to the Constitution, to this court's analysis of the Constitution, and say the Constitution provides the entitlement to just compensation, not, as far as I'm aware, an independent common law cause of action. Thank you, counsel. Let's suppose you bring, the state takes some action, you claim that it's a taking, you bring that claim for just compensation. In the state court, they decide, yes, it was a taking, and so the government owes you $3 million. And the government says, wow, we didn't think it was worth that much. Here, take it back. And can they do that? To a point, Your Honor. I think saying, here, take it back, runs afoul of what Justice Brennan identified in his San Diego gas and electric dissent, that ending the taking just creates an uncompensated temporary taking. And that is why, as this court noted in Nick, Justice Brennan's dissent became the law in first English, that just stopping the taking creates an uncompensated temporary taking. Certainly, the state is within its rights to cease a taking, if it wants to cease a taking. And it may be that evidence at trial shows Texas has chosen to cease the taking here. But the question is, and always based on the full factual record, what property interest has Texas actually taken, or has the defendant actually taken? So they can claim what we've taken is a temporary, you know, right, so we owe you rent, and that's just compensation? Exactly, Your Honor. The defendant is always free to say, this is just a temporary easement, or maybe this is a temporary partial easement. And they can say that after the fact? We took the whole thing, we found out we were taking more than we could, we were biting off more than we could chew, and so we're going to give it back to you. I think that would be a valid ground for going back to the district court and saying that the facts have changed. The way- Thank you. Justice Thomas? Justice Alito? Suppose that going forward, they find a way to divert the water so that it doesn't cause flooding in the future. Then what claim would you have? I think that would just be a claim for a temporary easement, Your Honor. Ultimately, the property interest in this case would be some kind of flooding easement. The trial court would have to decide whether it's a permanent easement, a partial easement, a temporary easement. And this is the kind of determination courts make in taking these cases every day. Yeah, and so if it's completely eliminated going forward, your property is not going to be flooded going forward. What would the remedy be? The remedy- so to the extent the court found on the facts that Texas had taken a temporary easement, it would be the fair market value of that temporary easement. Would that be different from damages? Yes, Your Honor, and- What way would it be different from damages? So damages are an attempt to rectify a wrongful act. And so a plaintiff seeking damages can seek consequential damages. I would have had- if you had paid me on time, I would have had this business opportunity that I- Yeah, I understand that. So how would you put a value on the temporary taking? It would be- generally speaking, there's testimony from dueling appraisers who talk about at fair market value what rent someone would pay for that kind of easement, what a willing seller would have sold that kind of easement for. But it's limited to the fair market value. It's limited to what the government took as distinct from what the property owner may have lost. Okay, thank you. Justice Sotomayor? Justice Kagan? Justice Barrett? Justice Jackson? Thank you, Counselor. Thank you, Your Honor. Mr. Nielsen? Mr. Chief Justice, and may it please the Court. The Court will be hard-pressed to find any government more committed to property than Texas. The Texas Constitution is more protective than the federal Constitution, and Texas courts, under a Texas cause of action, adjudicate takings claims under both constitutions. This appeal, thus, isn't about substantive rights. All petitioners had to do was use Texas's cause of action. Instead, petitioners insist they can bring a cause of action directly under the federal takings clause itself. This argument is wrong for many reasons. For one, it ignores what the Constitution says. Governments must provide just compensation. But the takings clause says nothing about how they must do it, whether through commissions, private bills, or litigation. For another, this Court held in Williams that Congress may constitutionally, and I'm going to quote here, quote, As petitioners concede Congress did just that for nearly a century, we don't see how this Court could hold for petitioners without overruling Williams. And as this Court explained in Nick, states didn't start recognizing state causes of action until after the 14th Amendment's ratification. Petitioners argue none of this matters because of First English, but the Court went out of its way in First English to emphasize that its decision was about substance, not procedure. And if First Williams somehow did include a procedural holding, Texas satisfies it. We have a cause of action for federal takings claims.  We welcome the Court's questions. How would that cause of action, what would it look like? So I'll point the Court to the Texas Supreme Court's decision in the city of Baytown. And they say, we hear claims under both the Texas Constitution and under the federal Constitution. And then they resolve the claim under Penn Central, which of course is a decision of this Court. Let's say we affirm here. Can petitioners' constitutional right be vindicated now in Texas courts? In federal courts. The problem is they haven't pleaded the claim. So at this point, you'd have to have leave from the district courts to amend their complaint if they wanted to bring a claim under the Texas cause of action. There's still live claims here. There's still a claim under the Texas Constitution itself, and they have federal due process claims. This is an interlocutory appeal. So they would have to get leave from the district courts to amend their complaint to bring a claim under Texas common law. They've just never done it because they say they don't have to. Counsel, just a couple of quotes from cases. In Cedar Point, we said that the court in First English concluded categorically that the government must pay just compensation for physical invasion. In Nick, it said First English rejects the view that the Constitution does not, of its own force, furnish a basis for a court to award money damages against the government. And we've said those in many cases. Those are just two recent ones where I wrote the opinions. Correctly wrote the opinions. So do you have any dispute with those? We do not, Your Honor. That's a question of the substantive right, which Texas does not dispute. And you could pursue that claim under the Texas cause of action in a Texas court or here in a federal court. Yes, Your Honor. It's the statement of the right. And that's a federal right, right? Yes, Your Honor. So you can require that this federal assertion of rights like that be brought in state court and not in federal court? Well, it's brought under a state cause of action. So you can remove if there's diversity of jurisdictions or something like that, like any other sort of cause of action. But the cause of action itself is created by Texas. And that's how it's been, as this court explained to Nick, that's how state courts have always done it. Since 1870s, this court said, and onwards, that's how we've done it. What we said in Nick is that the Constitution of its own force furnishes the basis for a court to award money damages. And you think what we had in mind, it's a basis in state court, but not federal court? When the claim is against the state, in Nick, the court said 19 times by our count, 1983, every time the court states the holding in Nick, they tie it to Section 1983, because there's a difference between the substantive right and the cause of action. In Nick, the cause of action was Section 1983, because Congress said, if you're going to sue municipalities or cities, there you go. There's the cause of action. But you removed to federal court where you couldn't bring an action under 1983, right? Correct, Your Honor. We did remove to federal court. Two reasons for that. One, this is not just one case. These are four separate cases, all punitive class actions. They say there's more than 100 plaintiffs here. Texas, these are filed in different counties. Texas has no way to put all of them in a single Texas court. So if the cases were going to be in a single court, it had to be through removal and put them in that court. The second reason for that was Texas courts don't have a lot of experience with implied rights of action, alleged applied rights of action for federal law. This is the bread and butter of this court. This court resolves those types of issues all the time. So we thought, let's just get it there. We get everybody in one case, and we can take out this punitive federal cause of action, which we think is flatly irreconcilable. So on what basis would they proceed against the state under 1983? They couldn't, Your Honor. There is no such claim. Congress has decided that you can bring claims against cities and municipalities. You cannot sue the states under Section 1983. They say they can. So under Bell v. Hood, they have a claim that there is a federal cause of action. When someone asserts that a federal cause of action exists, the federal courts have jurisdiction to decide whether that is true, and then they can decide on the merits whether the cause of action exists. Well, isn't that catch-22? You say they have to proceed in state court. They can't proceed in federal court. And as soon as they do, you remove it to federal court under 1983, where you say they can't proceed. We would make the same argument in state or federal court that there is no federal cause of action directly under the Fifth Amendment. Well, but that's what was rejected in the two cases that I read you, Cedar Point and Nip. With respect, Your Honor, I don't read either of those cases saying there is a federal cause of action. There's certainly a federal substantive right to relief. But as this Court said in all of the Bivens line of cases or all the implied rights of action cases, the right to, you know, a substantive right does not therefore mean that there is a cause of action. General, do you agree with Mr. McNamara that if a state takes a person's property and doesn't give compensation, that state is violating the Constitution every day? It's an ongoing violation. Do you agree with that? That's not how the Court has — I believe — I certainly agree that's a violation of the Constitution. I don't think this Court's cases have ever — But that's what I want to know. It's an ongoing violation of the Constitution, right? I've taken Mr. McNamara's property. I haven't paid him. Every day I'm violating the Constitution, correct? Yes, Your Honor. Okay. So aren't courts supposed to do something about that? Yes, Your Honor. And what this Court said in Nick is when there's not a cause of action — which, remember, there wasn't a cause of action. There's no remedies. Yeah, but this is very different. You know, in the usual case, we have a Constitution. Let's take a Fourth Amendment case. You know, it's — you've searched somebody's home illegally. It's happened. And then it's over. And then the question is, what remedy are you going to be giving for that violation? But this is a different kind of violation. It's not — it's not even clear that the word remedy is appropriate here. It's a right to compensation. And the state, by taking the land and not compensating, is violating that right every day. It's not that the state is failing to provide a remedy. The state is violating the right to be paid. Sure, Your Honor. And I — and the answer would be if it's not a cause of action. That's why I went back to Nick. Well, if it's not a cause of action, I mean, in the usual case, suppose that a state violates Mr. McNamara's First Amendment rights. Yep. Could he bring a suit about that? Yes, Your Honor, for injunctive relief. Yes. And what Mr. McNamara, I believe, is saying is that the usual distinction that we draw — you can bring a right for injunctive relief, but you can't — that you can bring a suit for injunctive relief, but you can't bring a suit for damages. That's the usual distinction. But it sort of falls apart in this case, because the right is a right to be paid. Yes, Your Honor. And so I come at this from maybe the other direction. Let's imagine that some government said, you know what? We're not going to pay. We're telling everybody now, you are on notice. We are not paying. Well, then what happens? Before they can do anything, you would rush to court and you would say, injunction. They can't do it. They've promised they're not going to pay. They're not going to provide that. And the Constitution says if they don't, they're violating their rights. That's Eastern Enterprises, the AFL, where it's clear that there's not going to be a right to judicial — to payment. No money's coming. Not judicial, but no payment's coming. You can get that injunction right away. I mean, let me make the point another way. I mean, it's sort of backwards to say that Mr. McNamara's client can sue for an injunction, meaning like, you know, give me back my property. Actually, the state has a right to take his property or a prerogative to take his property. If the state wants to use his property for a railroad, it doesn't really matter that a person doesn't want to sell. The state has the ability to take — the only thing that the state does not have the right to have is payment. So to say, well, look, you can sue for an injunction, but you can't sue for payment, just doesn't understand the nature of this right. Well, so our first-line argument is, you know, the way the United States did it for 100 years is correct. But if the court disagrees with that, if the court says, you know what, actually — But you're right. I kind of agree with that. Your best argument is, like, what happened between the time of the Constitution and, you know, someplace in the late 19th century. But suppose that I'm not such an originalist and I don't really care about that. Sure. All right. So that's the answer I'm going to say. So if the court says, we read First English and it requires not just a substantive relief, it requires some sort of judicial proceeding, which we don't think is consistent with the Texas does it. Texas provides the cause of action for which they can bring a federal takings claim. So even if that is true, which we don't believe is our first-line argument is correct, Texas still wins. What if Texas didn't do it, though? Sure. So that's where we get interesting. But I'm not — and I just want to be clear. I'm not talking about the hypothetical you gave where Texas announces in advance, we're going to take and we're not going to pay. Let's say that Texas takes and just this one property owner can't get the money, that Texas is being intransigent about it, and Texas says, and by the way, our state cause of action — we have no state cause of action for you to use in our courts to get the money. No private bills. We don't do that. There's no state law remedy. Sure. All right. So, you know, if a state goes rogue, that's how we're thinking about it, because we know from NIC all the states don't do that. But let's assume some state says, we're just not going to do that. Well, you have injunctive relief. I realize that might not be a perfect — Doesn't work in this hypothetical. Doesn't work because of that. Then the answer is exactly what the Constitution says. Congress, Section 5 of the 14th Amendment says, if a state is violating the Constitution, which would be happening in this scenario, that's precisely what Section 5 is for. Congress has never — So they have to wait for Congress to enforce it through legislation? Would there be some sort of due process violation or an argument that the state has to provide some sort of form? Well, that's what I'm trying to say. If we read First English that way, to say that not only is it — there's a substantive obligation, but there has to be some sort of judicial forum for vindication of that. Not a judicial forum. It could be an administrative forum. I mean, I'm taking your argument about that. You're really saying that the state could shut down and get no administrative forum, no legislative forum, no judicial forum, and because the Fifth Amendment doesn't create an implied cause of action, then the property owner would have to say, Congress, can you please use your Section 5 power? The answer would be, first, try to get an injunction. That doesn't always work for reasons that you say. In that scenario, yeah, that's what the Constitution says. Well, but — I'm sorry. I'm sorry. Those are two governments. I mean, we're talking about the ability of the government to take property without paying for it. But the states and Congress may have common cause on that, and the idea that, well, you look to a different government to tell this government that that's not something governments can do, that's not much of a remedy. Well, this Court has cases that says we trust that Congress takes this ill seriously. We trust that the states take their ill seriously. That's one of the premises of all that remain, that they're going to do that. But — Well, we also assume people act in their self-interest. Sure. And our whole system of separated powers is premised on that idea. And the self-interest here that would be created isn't a rogue state, but an incentive for governments not — to withdraw their existing causes of action. I think that's the thrust of Justice Barrett and the Chief's questions. And I guess I'm wondering, why wouldn't the injunction order the state to pay? So that's a question that has not been litigated, whether you could have injunctive relief to pay. So you have to provide just compensation. We're not telling you how. We're not telling you what form. But the Constitution commands it. And I said, that's — if you want to read First English that way, Texas has no quarrel with that, because we provide it. And we don't just provide through a commission, though I think we have the constitutional right to do so. We do it in court. But you have to answer the hypothetical. I think Justice Gorsuch's premise is that Texas isn't doing this. OK. So if we say that a Texas doesn't — or some state — doesn't have a court proceeding, and you don't have any other sort of commission, you still can get an injunction. And if you know the state doesn't have any of those things, you can get an injunction very, very, very early. And wouldn't the injunction say, Texas, you have an obligation to pay? And this is where — I'm not quarreling, because Texas — OK. You don't want to concede that. As a matter of first principles, I don't know how you get there. But I'm saying that Texas has no quarrel with it, because Texas does what you're saying. OK. I've got it. I've got it. I just want to clear up two other things. Sure. What is the common law cause of action? And what is the state constitutional cause of action that does exist that you say could have or wasn't brought? That's right. So the easiest place to see it, because it's the most recent and I think the most clear, is the Texas Supreme Court's city of Baytown. That just says, though, as I understand it from your colleague, to look at the federal constitution. So how does that help? Well, they look at both. They say, we resolve taking offense under our constitutions, plural, and then they cite both. So Texas is representing to this court that there is a state constitutional cause of action? Yes, Your Honor. OK. And is there a common law cause of action that achieves the same thing? That's what I'm — I must have misunderstood what you're saying. That is the cause of action. That is the cause of action. OK. And it wasn't pled here, is what you're — No, Your Honor. They've vigorously resisted the idea that they have to. OK. I got it. And what cause of action remains pendant, as you understand it? So they still have claims for federal due process, and they still have claims for the Texas Constitution. Would you oppose a leave to amend to add the Texas constitutional claim? On behalf of the state of Texas, we would not oppose that in the district court. OK. Thank you. Justice Gorsuch — I'm sorry. Go ahead. Point of clarification. Sure. Tell me how they plead this. Let's assume we affirm the court below. There's no freestanding right to come into federal court and sue Texas under the Fifth Amendment. How would they go to the Texas court and make their Fifth Amendment claim? What would they say in the Texas court? Yes. So what they would say here — and candidly, the pleadings have never been as pellucid as I think anyone would have liked. But what I think that they would say is, we are bringing our claim under state law, C.E.G. City of Baytown. I think that would be sufficient to get us there. That's — my gosh. I've never heard of pleadings in any state where you have to mention the law at issue. Usually you mention the facts, or you state the facts, and then you — But putting that aside, here they say, violation of Article I, Section 17 of the Texas Constitution for the taking, damaging, or the destruction of their property. That's count one. Yes, Your Honor. And count two says violation of the Fifth Amendment of the U.S. Constitution. Yes, Your Honor. Summarizing, basically. I don't know what else they would have had to do in Texas court if I cite that case. They said, I'm suing you in Texas court. You're the one who removed the federal court. This seems to me like a totally made-up case, because they did exactly what they had to do under Texas law. It's you who are telling me — it's almost a bait-and-switch — that you wanted to get the federal court to basically have a class action, and you couldn't do it in state court. So — but you had to fight something, which is — I don't know what you're fighting, because you're telling me that Texas lets them have a cause of action under the Fifth Amendment. Yes, Your Honor. There's no bait-and-switch here. I want to be clear on that. No bait-and-switch. Well, you're the one who removed. We removed, and they didn't come back and say, oh, no, you misunderstand what we're saying. Instead, every step along the way, they have doubled down, all the way going to, you know, seek certiorari review from this court. So if we misunderstood what they were saying — So if they go back down and say to the district court — this has been remanded to the district court — all we want is just compensation under the Texas Constitution and the Fifth Amendment under that case that you're mentioning. That's okay, and you're not going to resist — We would not resist that, Your Honor. Justice Gorsuch's injunction to pay hypothetical — I just want to make sure I'm clear on that. I thought you were saying we don't need to answer that question in this case, because Texas provides forums for compensation. Yes, Your Honor. Conceptually, I don't know how you get an injunction to pay money. But I'm not familiar with that. I understand that, but even the theoretical possibility of it is just not present here, right? Correct, Your Honor. And as I said, it's hard for me to quarrel with it, because Texas does pay money. But conceptually, I don't know how you get there. What about a declaration? Is that something different? A declaration? Could you sue for a declaratory judgment that Texas or whatever state is not paying you? So my understanding of a declaratory judgment action is this sounds in equity, not in damages. So I think it would fall within the universe of Ex parte Young-type remedies. So we wouldn't have any objection to that, either. Though, again, I'm a little bit shooting from the hip, so I apologize I wasn't briefed on that one. So I'm a bit nervous on that. Though, if I may, I would like just to make a couple of affirmative points. No, no. You can do that. I apologize, Your Honor. Justice Thomas? Justice Alito? Well, why don't you quickly make an affirmative point? Well, I would just like to say that as far as I am aware, Texas is the only party here that has offered evidence on the original public meaning of the actual language of the text, not the ideas, the actual language of the Constitution. And when courts looked at that language, they read it precisely the same way that Texas does now. Anything further? Thank you. Justice O'Leary? Justice Jackson? Thank you, Counsel. Thank you, Your Honor. Mr. Kneedler? Mr. Chief Justice, and may it please the Court, the Fifth Amendment to the United States Constitution does not, of its own force, create a cause of action against the government under the Fifth Amendment against the United States government for damages. Numerous provisions of the Constitution make that clear, including the text of the Just Compensation Clause itself. It says property shall not be taken for public use without just compensation. The right is not to have the property taken without compensation. It's not a right to compensation. And it's prohibitory. It has a condition for the governmental action to be lawful. That condition is the payment of compensation. If there is not compensation, then the action is unlawful and what lies is an injunction to cease the taking of the property. This Court, in a number of relatively recent cases, has made that point. In Ruckelshaus v. Monsanto, in Danes v. Moore, in the railroad reorganization cases, the question really was, should there be an injunction preventing this statute from going into effect? Or is there compensation available under the Tucker Act such that an injunction would not be appropriate? In all of those cases, that's what the Court held, that there was compensation available. But the very question presupposed that there might be situations in which compensation was not available. That's the violation. And the same thing, if you look at the overall context of the Fifth Amendment, that is also true. The preceding clause, as Justice Alito pointed out, says that no person shall be deprived of property without due process. The prohibition is the deprivation without the condition of due process. If a court finds a violation, it doesn't order due process. It enjoins the conduct that was undertaken without due process. The government can always go back and do it over again with due process. And finally, there's another clause in the Fifth Amendment that is written in exactly the same way, the indictment clause. It says a person shall not be held for a capital or otherwise infamous crime unless on a presentment of an indictment. An indictment is the condition preceding to having a lawful holding of somebody for a crime. Mr. Weiler, in the brief that you filed in First English 38 years ago, you argued that the Constitution does not, of its own force, furnish a basis for a court to award money damages against the government. Now, in the decision in First English, Justice Rehnquist rejected the idea, quote, that the Constitution does not, of its own force, furnish a basis for the court to award money damages against the government. Now, it seems to me that the question turns on basis. And what you seem to be saying is it doesn't mean that anybody could take that and recover compensation. They have to go get an injunction or they can't proceed at all because there's no cause of action? Yes. I mean, are you just re-arguing the point that the court rejected? Not at all. Not at all. But our point, that portion of our brief was really going to the cause of action question. And for the reasons that we said in that brief and this brief, I don't think the court rejected this. For all the reasons we said, not just the text of the clause, but the Appropriations Clause, the Fifth Amendment only applied to the United States, the Appropriations Clause would have prohibited any court from awarding a money judgment or an injunction to pay money because only Congress can authorize the payment of money from the Treasury. Well, but it's— I hope you and Mrs. Richmond makes that clear. Well, the Constitution can do it, too, which is what the rest of that footnote, rejecting the arguments that the government made in First English, said. It says that the cases make clear that it is the Constitution that dictates the remedy for interference with property rights amounting to a taking. So I'm not sure how you get around the fact that the Constitution speaks in terms of just compensation and not an injunction. Well, as I said, it speaks in terms of compensation, in terms of defining the right, which is not to have property taken without just compensation. But that footnote, I think it's important to understand the context of that footnote. In fact, all of First English was about the Egan's Rule in California, which said there was not even a taking. Sometimes they said no compensation, but there was no taking until a court first determined that there was a taking. And that was the rule, that was the controversy at the time, the so-called temporary taking. Does a taking arise in a regulatory context at the time the regulation is effective or later? That was the issue that the court rejected. And in that respect, it said no, compensation is owed from the moment of the Constitution. Thank you, counsel. Mr. Kneedler, I have a little trouble understanding your argument about the Tucker Act. In your view, neither the Tucker Act nor the Takings Clause provides a cause of action. But then you say the combination of the two somehow provides a cause of action. And the petitioner says that what you're saying is that nothing plus nothing equals something. So you must be relying on some kind of higher math that I can't understand. What is the cause of action in a Tucker Act suit? As I say, I think it's the combination of the two. It's not zero plus zero. It's one-half plus one-half. As we say, the Constitution of the Fifth Amendment itself does not create a cause of action. It would have been extraordinary if we went for 200 years, as pointed out, with that not being the case. But what the Tucker Act does is, as the court said two terms ago, three terms ago, I guess, it provides the framework under which it can be determined whether Congress has provided the ability to sue under the Tucker Act. The Tucker Act's standard is whether the particular substantive provision that is being relied upon can reasonably be read to mandate compensation if there is a violation. By definition, and the court made this point in Borns, the Tucker Act is there for something where there is an obligation, but no elements of a cause of action. So the, for example, the Fifth Amendment or the statute that may be involved, particular statute that may be involved, by definition does not create a cause of action. Congress provided in the Tucker Act that you can recover compensation if the other provision of law can reasonably be construed. That's a Tucker Act standard. All right. Suppose there, suppose that the takings clause was not in the Constitution, but Congress enacted a statute that said the federal government shall not take private property for public use without just compensation. Would that be a money mandating statute that creates a cause of action? I don't think so. I, because it's a, it's a, it's a prohibition. I think it's the same, the same as the Fifth Amendment itself. It is a directive to Congress not to, or executive, not to take property without affording compensation. Now, it may be that the particular statute would be understood or to be interpreted that way, but here we're talking about the Constitution and no other provision of the Constitution provides of its own force a remedy, particularly a remedy for damages. And that would have been extraordinary at the time the Constitution was adopted because of the Appropriations Clause, Sovereign Immunity, and the Debt Clause. If compensation is not paid, that is a debt of the United States. I find it hard to understand how that would not be a statute that mandates the payment of money. It says you, you can't take property for public use without just compensation. It's talking about paying money. If that's not a money mandating provision, then it might, it might be, it might be money, money mandating under the Tucker Act. I think I understood you say this wasn't the Tucker Act. No. But that's because the Tucker Act has been understood. It's another, it's another statute and we would interpret it like we interpreted the statute in Maine Community Health. Does it mandate the payment of money? I would think the answer to that would be yes. And if that's the case with the statute, why isn't it the same because the money mandating is not, is not something under the Tucker Act. It is, it is a provision in the Tucker Act that it's not, it's not the other statute. It's a provision in the Tucker Act and that is a Tucker Act specific standard for when Congress. Thank you. Mr. Needler, I thought your answer to Justice Alito was going to be going back to what you said at the beginning, which is the compensation is conditional in the same way as the due process clause is conditional. I thought that was very interesting and maybe you want to repeat it. Yeah, no, no. I think that's a fundamental point about the text of the just compensation clause itself, but the entire fifth amendment is pro is prohibitory. I mentioned the indictment clause, but the self-incrimination clause is the same way. The double jeopardy clauses is the same. So to the extent that we see a condition there, if you're not interpreting that as mandating that condition necessarily, it's about the prohibition. Right, exactly. If I could, I'm sorry. If I could go back to the chief justice's question about first English, the language in that footnote is directed to, it says remedial, but what it is referring to is the computation of just compensation as a remedial matter. If you have a cause of action, how do you calculate the remedy? All of the cases, it says, as the cases in the text make clear, it's a remedy and it does provide a basis for compensation, but in a cause of action where there already is one. Every one of the cases. Thank you counsel. This is Thomas. Is there any daylight between Texas's position and the government's position here? You representing the government? Yeah. To the extent there was a suggestion that there could be an injunction to pay money, we would disagree with that because of the appropriations clause. I think the fifth amendment cannot be read to allow that. So would it be a matter of semantics? You can't take this property? You have to stop flooding it? You have to stop whatever it is that would constitute a taking. Just to clarify your answer to Justice Alito in my head, you're saying it's the Tucker Act plus the statute mandating payment that gets you into court? That's correct. And it's certainly not the other provision itself, just compensation clause or the other statute, which by definition- So that's your half point, half point equals one. Yes. Okay. Sorry. Justice Gorsuch? Two questions. First, the rogue state example. Why shouldn't we worry about that? Why shouldn't we worry about the incentive structure we create that would allow states to withdraw compensation schemes and maybe the federal government too to exploit this loophole? With respect, it's not a loophole. It's a fundamental aspect of the Constitution that the Constitution does not require this. And the rogue state is answered by, it's a prohibition. And if Congress does not provide the condition necessary to render it lawful, you have an injunctive action. And as the court said in Nick, that was the way that just compensation issues were raised. Okay. And then second, this may be a question better directed to Mr. McNamara when he speaks on rebuttal, but Justice Sotomayor pointed out an interesting feature of the procedural history of this case. The complaint has two counts about takings. One is under the state constitution and the other is under the federal constitution. How do we read what the fifth circuit did here? Did it only dismiss the second, the federal claim? And is the first claim under, what is it, city of Bayview and the Texas constitution still live? Do they even need to amend their complaint to add it? Is it already there? There's a footnote in the court of appeals opinion that says that the Texas constitution or Texas provides a cause of action and that is not further elaborated upon, but it's remanded for further proceedings. So do you take it that that first count under the state constitution is still alive and available to the plaintiffs? It is still alive and available if it required an amendment to the complaint. Do you think it requires amendment to the complaint or because it was remanded for further proceedings and the court only expressly addressed the federal constitution that that first count is still alive? I think it would depend on whether that first count in relying on the state constitution was just relying on a state substantive right to compensation or whether it was also relying on the cause of action. Well, Texas has represented to us that it provides a cause of action, right? So yes, if the complaint is read to be invoking the state cause of action for the federal taking, then yes, I think that would be open on remand. Thank you. Justice Kavanaugh. Justice Barrett. Just to clarify something. So your position in response to say the rogue state hypothetical, when you said an injunction is the solution, it's not an injunction to pay money because you said the United States thinks that can't happen. So is it your position that if, say, a state or the United States takes property, refuses to give just compensation for it, that the property owner could get an injunction essentially saying, give me my property back if you're not going to pay and perhaps get that injunction, but not get reimbursed for the temporary taking that happened in between the seizure and the award of the injunction? That is correct. And the same thing would be true. There could be a temporary deprivation of due process. And if you get an injunction preventing the government from doing whatever it did without due process, there is an interim period. But a person could go to court, get a TRO, get a preliminary injunction to prevent that from going on a long time. That's just the nature of litigation and an injunction. But it doesn't lead to the question of damages. And this Court's cases, First English and others, had to do with the calculation whether interest should be paid. And that's what the Court meant about the Fifth Amendment being a basis for the award of compensation, not that there was a cause of action. Justice Jackson? Just to clarify from what Justice Barrett just said, the government's position would be that you would be out the compensation entirely, right? Right. That would depend on state law and the availability of a state cause of action. But I'm only talking about the federal cause of action, which there's no basis for an award of money out of the Treasury and overcoming sovereign immunity and all that in federal court for compensation even for that interim period. But the interim period is endemic to litigation, due process violation, being held on an indictment. But that is the proper remedy, and that's the remedy that existed until the Tucker Act was passed. It was the remedy that this Court said in Nick was the way to vindicate Fifth Amendment rights until the Tucker Act or state constitutions came along and provided a monetary remedy. Thank you. Thank you, Counsel. Rebuttal, Mr. McNamara? Thank you, Your Honor. To begin with Justice Gorsuch's question, I think it's important to remember the procedural posture here. I understood my friend from Texas to say that the city of Baytown decision means that Texas courts hear claims, quote, under the federal constitution. The complaint pleads a claim under the federal constitution, and to the extent Texas's only complaint with that was that it failed to cite directly to a Texas Supreme Court decision. It's not clear why Texas moved to dismiss it, sought an interlocutory appeal against it, that decision as a dispositive issue, and then extinguished it on the merits in the Fifth Circuit. To the extent that claim exists, that claim has been extinguished, and that warrants rehearsal. To the original meaning, and I think, Your Honor, the rogue state example is not a hypothetical. It's a real example, because state after state has looked to federal law and to first English as the thing that prevents the state from denying compensation. That's true in Oregon, as I mentioned, but also New Mexico, South Carolina, Nebraska, the list goes on of states that provide compensation under the Fifth Amendment because they understand the Fifth Amendment to require compensation, and they're correct to understand that, Your Honor. The original understanding, as evidenced by writings from James Madison to St. George Tucker, is that the Fifth Amendment creates an obligation to pay, which is why you can sue under the Tucker Act, because the Fifth Amendment creates an obligation to pay. Only in the absence of a court of competent jurisdiction to enforce that obligation do the federal courts resort to cases like Meade v. McClung's Lessee, where the court ejected the United States military from its own base because it didn't have clean title. That is the last resort in the absence of a court that has the jurisdiction to enforce that obligation. That's why in Maine Community Health, this court specifically pointed to the it means to create the obligation to pay. But more broadly, Your Honor, I think Texas's understanding of the Fifth Amendment would relegate property rights to the status of the core relation of the Bill of Rights. It would be the only acknowledged ongoing obligation in the Constitution that is entitled to no enforcement, that is left entirely to the discretion of the government entities that are supposedly obligated to pay. But surely, as evidenced by their writings and by the adoption of the Fifth Amendment itself, the framers meant for property rights to mean more than that. If the court has no further questions, we'll rest on our briefs. Thank you, counsel. The case is submitted.